**Lester MURPHY, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

No. 85–5849.

United States Court of Appeals, Sixth Circuit.

Submitted July 22, 1986.

Decided July 25, 1986.

Wolodymyr Cybriwsky, John Kirk Law Offices, Prestonsburg, Ky., for plaintiff-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., John S. Osborn, III, for defendant-appellee.

---

Before WELLFORD and MILBURN, Circuit Judges; and DeMASCIO, District Judge *.

MILBURN, Circuit Judge.

Plaintiff Lester Murphy appeals from a district court order affirming the final decision of the Secretary of Health and Human Services denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. For the reasons discussed below, we affirm.

I.

On October 5, 1983, plaintiff filed an application for disability benefits. In his application, plaintiff alleged that he became disabled on August 30, 1983, due to a "brain hemorrhage." Plaintiff's application was denied initially and upon reconsideration. Plaintiff then requested and was granted a *de novo* hearing before an Administrative Law Judge ("the ALJ"), which was conducted July 18, 1984.

At the hearing, plaintiff testified that he was forty years old and that he had an eighth-grade education. Plaintiff testified that he spends his time going to the store or resting. He does no housework other than washing dishes, and he occasionally works in his garden. Plaintiff testified that he suffered a ruptured aneurysm in 1983 which required surgery and placement of a drain tube in his back. He further testified that since the surgery he has lost much of his strength and that he tires very easily. He complained of pain in his chest, stomach, arms, hands, back, neck, and legs.

The medical evidence revealed that plaintiff was hospitalized at the Albert Chandler Medical Center from August 31, 1983, to September 17, 1983. The discharge summary, prepared by Dr. Byron Young, contains the following information:

HOSPITAL COURSE: The patient was admitted to the eighth floor intensive care unit and initially observed until angiography was performed on the 1st of September. It showed a left anterior communicating artery aneurysm. Repeat lumbar punctures for relief of headache were performed on the 1st and 2nd of September. On the 4th of September a lumbar drain was placed. On the 7th of September the patient underwent a craniotomy for clipping of the interior communicating artery aneurysm. The estimated blood loss of 300 ccs. There were no complications. Post-operatively the patient did well and was transferred to the floor on the 9th of September. Repeat CAT scan to the follow-up subarachnoid hemorrhage showed mildly enlarged ventricles. Then a lumbar puncture was performed with an opening pressure of 27. Several other lumbar punctures were obtained with opening pressures of 27 and 25. These are associated with mild aches, and relief of headaches after the puncture. On the 14th of September, Murphy underwent a placement of a thecoperitoneal shunt without complications. Post-operatively he did well. The patient remained afebrile throughout the hospital course.

Upon discharge, plaintiff was instructed not to work and to visit the neurosurgery clinic on September 27, 1983, for a follow-up.

Dr. Young also filed an Attending Physician's Statement for plaintiff's insurance company. The statement, dated September 26, 1983, indicated that plaintiff had been continuously disabled since August 31, 1983, and that it was "undetermined" when he would be able to return to work.

Dr. Michael Passidomo performed a consultative examination in December, 1983, at the request of the Social Security Administration and issued a report. Dr. Passidomo observed a slight thickening of plaintiff's speech but detected no aphasia. Dr. Passidomo also observed a "well healed" craniotomy scar in the left frontotemporal region. On cranial examination, plaintiff was able to perceive odor in the right nostril but could not identify the odor. Plantar responses were equivocal on the right side

---

* Honorable Robert E. DeMascio, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

but extensor on the left. The remainder of the examination was normal. Dr. Passidomo's impression was "status post left frontal craniotomy for resection of ruptured intracranial aneurysm."

Dr. Charles J. Hieronymus completed a General Medical Report in June, 1984. Dr. Hieronymus indicated that he had seen plaintiff from November, 1980, through July, 1984. Dr. Hieronymus recited plaintiff's medical history from 1983 which included treatment for an aneurysm, a pulmonary embolism, a history of right renal lesion, and complaints of pain and weakness in chest, back, arms, and stomach. Dr. Hieronymus indicated that plaintiff had a good recovery from his surgery. Dr. Hieronymus' current diagnosis was status post craniotomy and shunt placement for repair of aneurysm, status post pulmonary embolism, a history of right renal lesion, abdominal pain suggestive of liver dysfunction, and chest pain. Dr. Hieronymus concluded that plaintiff remained weak, tired easily, and was unable to perform any activity on a sustained basis at any exertional level.

On August 23, 1984, the ALJ found plaintiff to be ineligible for benefits, concluding that the evidence was "insufficient to establish that the claimant has a severe impairment or one that is expected to last for twelve continuous months from his alleged onset of disability." The ALJ specifically found that plaintiff had "the residuals of a craniotomy for a hemorrhaging aneurysm," but did not have "an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, subpart P, Regulations No. 4," and that plaintiff's impairments were not "expected to significantly limit his ability to perform basic work-related activities for a continuous period of twelve months."

On appeal to the Appeals Council, plaintiff submitted an additional statement from Dr. Young, dated September 21, 1983, indicating that plaintiff was continuously disabled from August 31, 1983. Dr. Young further indicated that it was "undetermined" when plaintiff would be able to return to work. The Appeals Council denied review, rendering the ALJ's opinion the final decision of the Secretary.

On December 6, 1984, plaintiff filed an action in the district court seeking review of the Secretary's decision. The district court concluded that substantial evidence did not support the Secretary's finding that plaintiff did not suffer from a severe impairment. However, the district court determined that substantial evidence did support the Secretary's finding that plaintiff had not satisfied the twelve-month durational requirement.

II.

Pursuant to 42 U.S.C. § 405(g), judicial review of the Secretary's decision is limited to determining whether there is substantial evidence in the record to support the decision. The reviewing court "may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984). The Secretary is charged with finding the facts relevant to an application for disability benefits, and the Secretary's findings, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

Substantial evidence is more than a mere scintilla. It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). "Substantiality of the evidence must be based upon the record taken as a whole." *Garner*, 745 F.2d at 388; *see also Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980); *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the 'substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir.1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct.

456, 464, 95 L.Ed. 456 (1951)); *see also Garner,* 745 F.2d at 388.

To qualify for disability benefits, plaintiff must prove that he is unable to engage in any substantial gainful activity as a result of a medically determinable physical or mental impairment which can be expected to last for a period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Plaintiff must prove that the impairment is severe and that it significantly limits his ability to perform basic work activities. 20 C.F.R. §§ 404.1520, 404.1521. An impairment can be considered not severe only if the impairment would not affect the plaintiff's ability to work regardless of his age, education and work experience. *See Salmi v. Secretary of Health and Human Services,* 774 F.2d 685, 691–92 (6th Cir.1985); *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir.1985).

■ Substantial evidence does not support the Secretary's finding that plaintiff did not have a severe impairment. Plaintiff's physician, Dr. Hieronymus, stated in his report that plaintiff was unable to engage in any exertional activity on a sustained basis. Dr. Young twice reported that plaintiff would be unable to return to work for an "undetermined" length of time. The only evidence cited by the Secretary to support the ALJ's finding of no severe impairment is Dr. Passidomo's report, dated December 21, 1983, that plaintiff suffered only mild residual effects from his aneurysm. On this record, we cannot conclude that plaintiff's impairment would not have interfered with his ability to perform basic work-related activities.

■ Once it is determined that a claimant's impairment is severe, we must presume that the impairment continues to be severe until there is medical evidence to the contrary. *Garner,* 745 F.2d at 389. The Secretary presented evidence that by the time of the hearing plaintiff's impairment had greatly improved. Dr. Passidomo's report indicated that plaintiff suffered only mild residual effects from his aneurysm, and Dr. Hieronymus' report indicated that plaintiff had a "good recovery" from his surgery. Dr. Hieronymus' conclusion that plaintiff was unable to perform any exertional activity on a sustained basis was not supported by any specific medical data. While it is ordinarily true that a treating physician's diagnosis is to be given greater weight than the government physician's diagnosis, this is true only "if the treating physician supplies sufficient medical data to substantiate the diagnosis." *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 538 (6th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). We conclude that the ALJ's finding that plaintiff's impairment did not meet the durational requirement is supported by substantial evidence.

Unexplainably, plaintiff consumes most of his brief arguing that the district court improperly made a *de novo* determination that plaintiff's impairment did not satisfy the twelve-month durational requirement. To the contrary, the ALJ specifically found that plaintiff's impairment did not satisfy the requirement. The ALJ said:

> I find that the evidence is insufficient to establish that the claimant has a severe impairment or one that is expected to last for twelve continuous months from his alleged onset of disability....

\* \* \* \* \* \*

#### FINDINGS

After careful consideration of the entire record, the Administrative Law Judge makes the following findings:

\* \* \* \* \* \*

4. Claimant's impairments are not expected to significantly limit his ability to perform basic work-related activities for a continuous period of twelve months....

Plaintiff's argument is wholly without merit.

### III.

Accordingly, we AFFIRM the decision of the district court.