833 F.2d 1012
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Johnnie KEEN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-4090.
 United States Court of Appeals, Sixth Circuit.
 Nov. 9, 1987.
 
 Before KEITH, MILBURN and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Johnnie Keen appeals the district court's summary judgment order affirming the Secretary's denial of social security benefits. Plaintiff also raises on appeal the district court's order denying her motion for reconsideration and to supplement the record. For the reasons that follow, we affirm.
 
 I.
 
 2
 Johnnie Keen filed an application for social security disability benefits on August 11, 1981. In her application plaintiff complained of mitral valve prolapse,[1] degenerative disease of the cervical spine, hypertension, and low blood sugar. Benefits were denied initially and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on March 19, 1982. One year later, on March 21, 1983, the ALJ issued his decision denying plaintiff benefits. The ALJ concluded that the plaintiff did not have a "severe impairment" and therefore was not disabled. See 42 U.S.C. Sec. 423(d).
 
 
 3
 The plaintiff appealed the ALJ's decision to the Appeals Council, and the decision was adopted by the Appeals Council on October 26, 1983. The plaintiff then sought review in the district court.
 
 
 4
 On April 12, 1985, the district court concluded that the ALJ's decision that the plaintiff did not have a severe impairment was not supported by substantial evidence. It therefore issued an order remanding the case to the Secretary for continuation of the sequential-evaluation procedure.
 
 
 5
 The ALJ, without taking any new evidence, reviewed his findings and issued his second decision on November 13, 1985. The ALJ again recommended the plaintiff be found not disabled. This time the ALJ did find a severe impairment but concluded that the plaintiff had residual functional capacity for medium work. The plaintiff was also found to be a high school graduate in the "younger individual" age group (under 50). Applying 20 C.F.R. Pt. 404, Subpart P, App. 2, Table No. 3, "the grids", the ALJ concluded that the plaintiff was not disabled. The Appeals Council, after considering claimant's objections to the recommended decision, adopted the ALJ's findings and conclusions.
 
 
 6
 Plaintiff again sought review in the district court. On August 13, 1986, the district court denied her motion for summary judgment and granted summary judgment to the Secretary. The plaintiff immediately filed a motion for reconsideration and to supplement the record. She argued that the district court had based its decision on a factual error. The district court, treating the motion as one to remand under 42 U.S.C. Sec. 405(g), found the plaintiff had not shown good cause as required by the statute for failure to submit new evidence and denied the motion on October 3, 1986. Plaintiff appeals these rulings of the district court.
 
 II.
 
 7
 Plaintiff Johnnie Keen was born on January 10, 1934. She completed high school and worked at the Lawson's Milk Division as a small grocery store manager from November 1972 through April 1978. Joint Appendix at 37. She has had a history of medical problems, including mitral valve prolapse, degenerative cervical spine disease, hypertension, and low blood sugar. Joint Appendix at 37.
 
 
 8
 The record discloses that plaintiff has been in and out of hospitals since at least 1977. She was hospitalized nine times from March 1978 to February 1982. She was also admitted into a hospital emergency room once in July 1981. The following discussion outlines the result of these hospitalizations.
 
 
 9
 On March 27, 1978, plaintiff was hospitalized at Robinson Memorial Hospital for persistent vomiting and dehydration, and her treating physician was Dr. Chiu Lap William Tsang. Plaintiff was found to have mitral valve prolapse syndrome, with intermittent palpitation of the heart. Joint Appendix at 97. She also suffered from ptosis of the right kidney with possible mild cystocele and gastroenteritis. Id. She was treated with a glucose IV and Dramamine for her sickness and dizzy spells. After being hospitalized for four days, she was discharged in an "improved" condition. Id.
 
 
 10
 Plaintiff was again hospitalized from June 26, 1978, to July 2, 1978. Dr. Tsang admitted plaintiff for complaints of severe headaches, hypertension, and pain in the posterior neck. Joint Appendix at 104. A brain scan and skull X-rays were taken and proved normal. Dr. Tsang then took an X-ray which revealed mild degenerative disc disease of the cervical spine with muscle spasm. Id. He also found her to have a psychosomatic disorder with anxiety reactions.
 
 
 11
 In treating the psychosomatic problem, Dr. Biswuell acted as a consultant. He saw plaintiff and suggested relaxation. She was discharged on medication in an "improved condition." Joint Appendix at 104.
 
 
 12
 Plaintiff then enjoyed a short period of relatively good health but was in the hospital again from August 7 to August 11, 1979. Joint Appendix at 114. Again, Dr. Tsang was the treating physician. Plaintiff was treated for accelerated hypertension with a blood pressure of 170/100 and pain of the right side of the chest and upper abdomen, but medication normalized her blood pressure. Again, she was discharged in an "improved" condition. Id.
 
 
 13
 Plaintiff was next hospitalized from March 18 to April 2, 1980. Joint Appendix at 122. Plaintiff complained of severe pain on the neck with radiation to the left arm. A cervical X-ray confirmed a cervical sprain with radiculitis. Dr. Tsang again noted plaintiff's degenerative disease of the cervical spine and prescribed a cervical collar. Plaintiff also complained of a sore throat and was found to have pharyngitis which was treated with Ampicillin. She was discharged in an "improved" condition. Id.
 
 
 14
 On August 18, 1980, plaintiff was hospitalized at Robinson Memorial after losing consciousness in another doctor's office. Joint Appendix at 129. Plaintiff had shortness of breath, profuse sweating, weakness, and dizziness. Tests performed on claimant's heart revealed an audible systolic "click." Dr. Tsang attributed this to plaintiff's previously diagnosed mitral valve prolapse syndrome. Again, Dr. Tsang noted on plaintiff's hospital charts plaintiff's "degenerative disc disease." Id. She was treated with medication and dismissed in an "improved" condition. Id.
 
 
 15
 Plaintiff was hospitalized for four days in late October 1980. Joint Appendix at 137. She was admitted with a sore throat, a condition she had encountered four or five times that year. She was treated by Dr. A.A. Kuri, who performed a tonsillectomy and discharged plaintiff in a "satisfactory condition." Id.
 
 
 16
 Plaintiff's next visit to the hospital was from March 8 to March 13, 1981, for chronic sinusitis, severe pressure headaches, drainage, and sore throat. Joint Appendix at 145. Dr. Kuri was the treating physician. An X-ray of plaintiff's sinuses showed advanced sinusitis, and plaintiff was taken to surgery where bilateral sinusotomies were performed. Id. She was discharged in a satisfactory condition. Id.
 
 
 17
 On July 11, 1981, plaintiff was taken by her husband to the emergency room at Robinson Memorial. She complained of a "sick stomach." Joint Appendix at 157. She was treated by the staff doctor and was diagnosed as having hypertension and possibly a virus infection. Id.
 
 
 18
 On her August 11, 1981, application for disability benefits, plaintiff stated that her last day of work was April 24, 1978. On August 19, 1981, Dr. Tsang was requested by the Ohio Bureau of Disability Determination to describe claimant's medical problems. Joint Appendix at 160. Dr. Tsang responded that plaintiff had degenerative arthritis of the cervical spine, possible fibrositis and mitral valve prolapse. Joint Appendix at 161. He noted that plaintiff had chest pain which, while relieved by medication, was severe. Id. Dr. Tsang also stated plaintiff needed to use a cervical collar and to take medication. Id. Dr. Tsang advised that plaintiff had been his patient since 1974.
 
 
 19
 On October 1, 1981, Dr. Tsang again corresponded with the Bureau of Disability Determination. He stated in his letter:
 
 
 20
 I do not feel that Johnnie Keen can be gainfully employed because of her complicated problems including degenerative disease of the cervical spine consistent with seronegative spondyloarthropathy and ankylosing spondylitis and mitral valve prolapse.
 
 
 21
 Joint Appendix at 162. Dr. Tsang also enclosed a letter from a Dr. Andrew Raynor, who had examined Ms. Keen pursuant to Dr. Tsang's referral. Dr. Raynor concluded that plaintiff had "rheumatic disorders ... consistent with seronegative [not infected] spondyloarthropathy [vertebral disease] and ankylosing [immobilizing] spondylitis [vertebral inflammation]...." Joint Appendix at 163.
 
 
 22
 Plaintiff was again hospitalized on December 1, 1981, for nine days and on February 17, 1982, for nine days for chest pains and shortness of breath. Joint Appendix at 164 and 171. Dr. Tsang was the attending physician, and each time she was treated with medication and was discharged in a satisfactory condition.
 
 
 23
 On April 2, 1982, Dr. Tsang completed a physical capacities evaluation for plaintiff. Joint Appendix at 170. Dr. Tsang concluded that plaintiff could neither sit, stand, or walk at all in a given work day. He further concluded that she could "occasionally" lift or carry up to five pounds but could "never" lift or carry any more than five pounds. He noted that while plaintiff's hands could be used for simple grasping, they could never be used for pushing or pulling or fine manipulation. Id. As to her legs, plaintiff could occasionally bend but could not squat, crawl, climb, or reach. He marked on the form that plaintiff should not be "around" machinery, unprotected heights, dust, fumes, or gases. Id. He also noted that plaintiff had a mild ability to drive. Finally, Dr. Tsang commented that plaintiff had "marked functional limitations." Id.
 
 
 24
 The ALJ's conclusions which are the subject of this appeal were made on November 13, 1985. The ALJ made the following recommended findings and conclusions: (1) the plaintiff did have a severe impairment; (2) while her impairment did not meet the Appendix 1 requirements, it did prevent plaintiff from doing her past relevant work; (3) the plaintiff had a residual functional capacity to do medium work; (4) the plaintiff had a high school education; and (5) that plaintiff was disability insured through December 31, 1982, and that as of that date she was forty-eight years old and therefore considered a "younger individual" under 20 C.F.R. Sec. 404.1563.[2] Joint Appendix Supp. at 195. Applying these findings to the grid, the ALJ concluded that the plaintiff was not disabled at any time through December 31, 1982. Id.
 
 
 25
 Before the Appeals Council, plaintiff argued that the recommended findings and decisions of the ALJ should be rejected. Joint Appendix Supp. at 177. Specifically, plaintiff took issue with the ALJ's conclusion that she could perform medium work. Id. Plaintiff did not take issue with the ALJ's findings as to when her disability insured status terminated. The Appeals Council adopted the findings and conclusions of the ALJ, see Joint Appendix Supp. at 178, and plaintiff sought review from the district court. The conclusions made by the district court in its August 13, 1986, order are crucial to understanding this appeal.
 
 
 26
 The district court focused for the first time on plaintiff's disability insured status. The court noted, "critical to this action is the additional finding that plaintiff was last insured for disability benefits on December 31, 1982." Memorandum Opinion and Order of August 13, 1986, at 1. Because plaintiff's disability insured status terminated on December 13, 1982, the district court concluded that at all relevant times plaintiff should be classified as a "younger individual" for purposes of application of the grids. Id. at 3.
 
 
 27
 As a younger individual, plaintiff is considered not disabled under the grids whether capable of medium or only sedentary work. That is, Table 3, covering individuals who can perform medium work, and Table 1, which covers those who can do only sedentary work, both direct a finding of not disabled for a younger individual who has a high school education. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.21, 203.29. The district court analyzed plaintiff's case by focusing on plaintiff's age classification and not on the residual functional capacity findings of the ALJ. As to those findings (viz., that the plaintiff could do medium work), the court made the following statement:
 
 
 28
 Plaintiff contends that the evidence reflects she has a residual capacity only for sedentary work. Independent examination of the record is in agreement with plaintiff's position, i.e., it shows there is substantial evidence to support a finding that plaintiff has, at the least, the residual functional capacity to perform sedentary work.
 
 
 29
 Id. at 3 (emphasis added).
 
 
 30
 The district court found the age issue dispositive, given plaintiff's education. Accordingly, the residual functional capacity finding was not reviewed any further. However, the district court did state that the plaintiff had not contested the finding regarding the disability insurance termination. It commented:
 
 
 31
 Plaintiff argues that the decision should take into account that as of January 10, 1984, plaintiff became fifty years old, thus would no longer be considered a younger individual under the medical-vocational guidelines. Implicit in this argument is the assumption that plaintiff remains insured. However, plaintiff does not specifically contest the finding of the Secretary concerning the date of December 28, 1982. Under these circumstances that is the applicable date, thus plaintiff was considered to be a younger individual for all times relevant to this case....
 
 
 32
 Id. at 3. As a result, the district court granted the Secretary's motion for summary judgment. Id. at 4.
 
 
 33
 Plaintiff immediately filed a motion to reconsider on August 19, 1986. Plaintiff argued that the ALJ incorrectly concluded she was disability insured only through December 31, 1982. Plaintiff complained that she had worked in 1978 and consequently was entitled to be insured through December 31, 1983. Because her fiftieth birthday was on January 10, 1984, plaintiff argued that she should have been considered a person "closely approaching advanced age" (50-54), for purposes of application of the grids. See 20 C.F.R. Sec. 404.1563. If the plaintiff was capable of only sedentary work, she would be considered disabled if classified in the 50-54 group. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.12. Plaintiff also sought to supplement the record with her 1978 W-2 form showing she had worked in that year.
 
 
 34
 The district court, treating plaintiff's motion of August 19, 1986, as a motion to remand based on new evidence, see 42 U.S.C. Sec. 405(g), denied the motion. The district court concluded there was no good cause for plaintiff's failure to make the Secretary aware of her 1978 W-2 form.
 
 III.
 
 35
 The plaintiff's motion of August 19, 1986, was styled as a motion to reconsider and to supplement the record. Plaintiff sought to introduce a 1978 W-2 form showing that she had earned $6,100.38 in 1978. Plaintiff argued that these wages in 1978 entitled her to disability insurance through December 31, 1983.
 
 A.
 
 36
 First, we conclude the district court properly considered this motion as one to remand. The court noted that "since this court acts as an appellate court only it cannot consider new evidence." Memorandum Opinion at 2. The district court was correct in so concluding. There is no authority for the district court on a request for judicial review to reconsider its own decision based on new evidence. The court's role in reviewing the decisions of the Secretary is limited to a determination of whether those findings are supported by substantial evidence. Moore v. Califano, 633 F.2d 727, 729 (6th Cir.1980). The district court, in reviewing the Secretary's decision, "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). See also Murphy v. Secretary of Health & Human Services, 801 F.2d 182, 184 (6th Cir.1986) ("the Secretary is charged with finding the facts relevant to an application for disability benefits and the Secretary's findings, if supported by substantial evidence, are conclusive."); 42 U.S.C. Sec. 405(g).
 
 
 37
 There is, however, statutory authority to remand a case to the Secretary on the presentation of new and material evidence. 42 U.S.C. Sec. 405(g) provides:
 
 
 38
 The court may ... at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....
 
 
 39
 This court has held that section 405(g), which was amended in 1980, sets forth three requirements before a motion to remand will be granted. The evidence sought to be produced must be: (1) new, (2) material, and (3) omitted only for good cause. Willis v. Secretary of Health and Human Services, 727 F.2d 551, 554 (6th Cir.1984) (per curiam). In Willis, this court commented that section 405(g), as amended, was intended to limit the ability of federal courts to remand to the Secretary. Id. at 553. See also Oliver v. Secretary of Health and Human Services, 804 F.2d 964 (6th Cir.1986). The 1980 amendments to section 405(g) add the requirements that the evidence forming the basis of the remand order be new and material.
 
 
 40
 In the present case, the district court's order may be affirmed upon examination of only the first requirement. The W-2 form submitted by the plaintiff is by no means new. The form has been in plaintiff's possession since at least 1980, and, hence, the plaintiff could have made the Secretary aware of it prior to the August 19, 1986, motion. This evidence not being new, there is no need to consider whether plaintiff had good cause for failing to submit it. The motion to remand was properly denied.
 
 B.
 
 41
 Plaintiff, however, argues that even disregarding the W-2 form, there is not substantial evidence to support the ALJ's conclusion that she was disability insured only through December 31, 1982. This argument is not without merit.
 
 
 42
 A plaintiff under the Social Security Act is entitled to disability benefits if she can demonstrate the existence of a disability, within the meaning of the Act, which arose before expiration of her insured status. Hardaway v. Secretary of Health & Human Services, 823 F.2d 922 (6th Cir.1987). If a plaintiff can show that the disability arose before termination of the insured status, she is entitled to benefits if a valid application has been filed. See 42 U.S.C. Sec. 423(a).
 
 
 43
 Judicial review of the Secretary's decision that a plaintiff is not entitled to benefits is statutorily limited to whether the Secretary's findings are supported by substantial evidence. 42 U.S.C. Sec. 405(g). "When supported by substantial evidence, the findings of fact of the Secretary are conclusive, and a decision denying benefits cannot be overturned." Houston v. Secretary of Health & Human Services, 736 F.2d 365, 366 (6th Cir.1984). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 
 44
 As has often been noted, however, substantial evidence must be based on the record as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980); Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 536 (6th Cir.1981). This court has held that "[i]t is improper to base a decision on one single piece of evidence and to disregard other pertinent evidence." Ellis v. Schweiker, 739 F.2d 245, 249 (6th Cir.1984). Substantial evidence review, therefore, must take into account the evidence supporting the Secretary's decision and ' "whatever in the record fairly detracts from its weight." ' Garner v. Heckler, 745 F.2d 383, 388 (6th Cir.1984) (quoting Beavers v. Secretary of Health, Education & Welfare, 577 F.2d 383, 387 (6th Cir.1978)).
 
 
 45
 In the present case, the ALJ found plaintiff's disability insured status terminated December 31, 1982. The extent to which a person is disability insured depends on when she last earned income. The regulations provide that a person may obtain disability insured status under four different rules. 20 C.F.R. Sec. 404.130; see also 42 U.S.C. Sec. 423(c). Rule 1 provides that a person has disability insured status if, in the quarter in which the person claims disability benefits, the person: (1) is fully insured (which is not at issue in the present case), and (2) has earned at least twenty quarters of coverage ("QC's") in the forty-quarter period ending with that quarter in which the person claims entitlement. In other words, one must look at the quarter in which a person is claiming benefits, count back forty quarters, and then determine whether the person has earned twenty QC's in that forty-quarter period. Id. In 1978, an individual was credited with earning one QC for every $250 paid in wages. 20 C.F.R. Sec. 404.143 (a). Of course, no more than four quarters of coverage may be earned in one calendar year. Id.
 
 
 46
 In the present case, the ALJ's finding that plaintiff's disability insured status terminated on December 31, 1982, was dependent on a finding that she earned no QC's in 1978. Hence, counting back forty quarters from December 31, 1982, to December 31, 1972, the ALJ found plaintiff earned 20 QC's from December 31, 1972, through December 31, 1977. Finding she earned no QC's in 1978, he concluded her disability insured status terminated in 1982.
 
 
 47
 The only evidence supporting the Secretary's finding that plaintiff did not receive any wages for which she could be credited QC's in 1978 is Exhibit 9, SSA Form 794-TR. Form 794-TR is a computer generated print-out of an individual's earnings. The form lists earnings since 1937. On plaintiff's Form 794-TR no earnings were listed for the year 1978. Plaintiff took no part in this form's preparation.
 
 
 48
 Evidently, the ALJ relied exclusively on Form 794-TR in determining plaintiff's disability insured status. The form is cited by the ALJ for the proposition that plaintiff was disability insured only through 1982. The ALJ, however, made no attempt to reconcile plaintiff's testimony that she worked through April 24, 1978, with the fact that the form lists no earnings for 1978. Indeed, in Finding (1), Recommended Findings, November 13, 1985, the ALJ includes as a recommended finding plaintiff's testimony that she worked through April 24, 1978.
 
 
 49
 Several other exhibits also note that plaintiff's last day of employment was April 24, 1978. For example, plaintiff's application for disability insurance benefits (Exhibit 1), Joint Appendix at 72; Vocational Report (Exhibit 10), Joint Appendix at 79; Disability Report (Exhibit 11), Joint Appendix at 82; and Work Background Form (Exhibit 24), Joint Appendix at 166, all list her last day of work as April 24, 1978. Additionally, the transcript of the March 19, 1982, hearing before the ALJ showed that the ALJ was aware of this. The following took place between the ALJ and plaintiff:
 
 
 50
 Q. All right. Now you completed a form for us called the Work Background Report and it's intended to describe what you might have been doing during the past 15 years which is what we call the relevant work period and it would indicate that from 1972 until April 24, 1978, you worked for Lawson Milk Company. Is that correct?
 
 
 51
 A. Yes sir.
 
 
 52
 ...
 
 
 53
 Q. It's indicated that you last worked April 24, 1978.
 
 
 54
 A. Right.
 
 
 55
 Thus, the ALJ was clearly aware that the plaintiff had stated she worked through April 24, 1978.
 
 
 56
 We conclude that the ALJ's finding that plaintiff was disability insured only through December 31, 1982, is not supported by substantial evidence. We reach this conclusion even disregarding the plaintiff's 1978 W-2 form indicating she earned wages in 1978. However, we also find that despite this conclusion the Secretary's decision to deny benefits is proper because there is substantial evidence to support the Secretary's conclusion that plaintiff has a residual functional capacity sufficient to support a finding of no disability.
 
 C.
 
 57
 Assuming arguendo that plaintiff should be considered disability insured through December 31, 1983, and that notwithstanding the ten-day time gap she should also be considered in the older category, we find that the Secretary's decision is supported by substantial evidence. This court has previously held that the grids do not violate the due process clause and can be applied by the Secretary. Kirk, at 531-35.
 
 
 58
 The ALJ in his recommended findings of November 13, 1985, concluded that plaintiff was capable of medium work and that she had no nonexertional limitations. Plaintiff contended that she could do only sedentary work. The district court, as stated earlier, seemingly rejected the ALJ's conclusion, noting "independent examination of the record is in agreement with plaintiff's position." Nevertheless, the district court found the age issue dispositive and therefore did not fully review the evidence supporting the ALJ's conclusion. After reviewing the record, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff retains the residual capacity to function above the sedentary level.
 
 
 59
 We note initially that a review of the grids shows that if plaintiff could do medium work, she is not disabled even though placed in the 50-54 age group. 20 C.F.R. Pt. 404, Subpt. P., App. 2, Rules 203.21-.24. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. Sec. 404.1567(c). If a person can do medium work, the Secretary concludes that she is also capable of light work. Id. Light work is work which involves a "good deal of walking or standing" or if it involves sitting, then sitting most of the time. Id. at Sec. 404.1567(b).
 
 
 60
 Plaintiff relies mainly on the conclusions of Dr. Tsang, plaintiff's treating physician since 1974, to support her argument that the Secretary's decision is not supported by substantial evidence. Normally, a treating physician's conclusions are entitled to substantial deference. Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 855 (6th Cir.1986). The Secretary, however, is not bound by the treating physician's conclusions and must independently make a determination of disability. Id.; see also 20 C.F.R. Sec. 404.1527. Hence, while Dr. Tsang's October 1, 1981, letter may be probative, it is not dispositive. The disability decision must still be made by the Secretary upon evaluation of objective medical evidence, including laboratory findings, and plaintiff's own statements regarding disability. Id. at 852; see also Kimbrough v. Secretary of Health & Human Services, 801 F.2d 794 (6th Cir.1986).
 
 
 61
 Here, the medical evidence showed that Dr. Tsang may have overestimated plaintiff's degree of limitation. While the plaintiff does have cervical degenerative disc disease, neurological evaluations have consistently been normal. Plaintiff's hypertension was mild and "under control." While Dr. Tsang has estimated that plaintiff cannot sit, stand, or walk at any time during a normal eight-hour workday, Joint Appendix at 170, there is no objective medical evidence of a condition which should reasonably be expected to limit plaintiff's ability to do these functions.
 
 
 62
 Indeed, plaintiff's own testimony at the administrative hearing of March 1982, does not suggest such an extreme limitation. For example, she testified that she could drive for fifteen miles at one time, that she could go out in the evening, that she could collect antiques, that she could sit, though for only thirty minutes at a time without becoming fidgety, and that she could walk, although she would not guess as to how far. Joint Appendix at 20-25.
 
 
 63
 Plaintiff also complained of chest pains, yet the ALJ found, and the record supports, that there are no reported symptoms of congestive heart failure. The plaintiff has mitral valve prolapse. Joint Appendix at 161. However, electrocardiograms and cardiac enzymes produce normal results. The physical examinations simply fail to reveal serious cardiac abnormalities. Although a systolic click was found in plaintiff's heart in 1978, plaintiff's heart sounds and heart size were regularly within normal limits. See Exhibits 13, 14, 15, and 16, Joint Appendix at 97, 104, 114, 122. Also, a twenty-four hour heart monitor revealed no significant abnormalities. Exhibit 17, Joint Appendix at 130. Several chest X-rays and lung scans have been taken of plaintiff, all of which have been normal. See Exhibits 14, 15, and 16.
 
 
 64
 A review of the entire record shows that there was substantial evidence which would support the Secretary's conclusion that plaintiff can perform medium work. While there is evidence that plaintiff suffered from a number of maladies, there is also objective evidence in the record which would justify a rejection of a majority of these claims. For example, in every case where plaintiff was admitted to the hospital, she was discharged in an improved condition. This evidence consists of objective medical and laboratory tests which are sufficient to support the ALJ's conclusion. The definition of medium work states that it requires lifting no more than fifty pounds at a time and frequent lifting of objects weighing up to twenty-five pounds. Also, it requires a good deal of walking or standing or when it involves sitting, sitting most of the time with some pushing and pulling of arm or leg controls. In our view, there is substantial evidence in the record of plaintiff's good health or lack of medically definable difficulties so that the ALJ's decision must be affirmed.
 
 IV.
 
 65
 From our review of the entire record, it appears that plaintiff was classed as a younger individual only because of an administrative error in the preparation of Form 794-TR. Plaintiff vociferously objects to this error. Assuming that plaintiff should be classified in the 50-54 group, however, the grids direct a finding of no disability if she can perform medium work. The Secretary concluded she can perform medium work, and this court is limited to determining whether there is substantial evidence to support the Secretary's decision. We find there is, and thus AFFIRM the denial of benefits.
 
 
 
 [1]
 The mitral valve is a valve in the heart which controls the flow of blood between the left upper and lower heart compartments. Prolapse occurs when the valve "sinks" or "sags" from its normal position. See J. Schmidt, Attorneys' Dictionary of Medicine (1986)
 
 
 [2]
 The ALJ also concluded that plaintiff's skill level was semi-skilled and did not reach the issue of skills transferability given his conclusions on the other factors. The issue of skills levels is not material on this appeal