977 F.2d 582
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eugene PENCE, Plaintiff-Appellant,
v.
Louis SULLIVAN, Department of Health and Human Services,
Defendant-Appellee.
 No. 91-6334.
 United States Court of Appeals, Sixth Circuit.
 Oct. 7, 1992.
 
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges, and COOK, Chief District Judge.[1]
 PER CURIAM.
 
 
 1
 The Plaintiff-Appellant, Eugene Pence, appeals the entry of a summary judgment by the district court in favor of the Defendant-Appellee, Louis Sullivan, Secretary of the Department of Health and Human Services (Secretary), and the rejection of his application for an award of Social Security disability benefits. On appeal, Pence argues that (1) the Secretary failed to apply the proper legal procedures in evaluating his disability case, and (2) the findings of the Secretary are not supported by substantial evidence. For the reasons discussed below, we affirm.
 
 I.
 
 2
 Eugene F. Pence was born on July 17, 1924. He completed the 6th grade, and later obtained a GED. Following his retirement from the United States Army in 1976, Pence attended college and received a degree in industrial technology. His last employment was with the federal government where he served as a sergeant major in charge of recruiting for the 101st Airborne Division in Fort Campbell, Kentucky. In this position, he supervised or coordinated approximately 150 recruiters. His claim for disability benefits is based on several medical ailments that were suffered by him between September 15, 1979 and the end of his insurance coverage in 1981.
 
 
 3
 According to the record, Pence has had a series of medical problems. Beginning in 1969, he had extensive surgery on his ears due to a fungus infection that had developed during his military service in Vietnam. In 1973, Pence tore a ligament in his left knee which was surgically repaired. He later complained of multiple joint pain, tendonitis in his left elbow, a back injury, and pain in his cervical spine. Pence was also diagnosed as suffering from hypertension, for which his treating physicians recommended a reduction in his weight.
 
 
 4
 The various medical tests that were taken in 1977 and 1982 indicated that Pence had experienced extensive degenerative changes in his musculoskeletal system, with a minor compromise of the intervertebral foramina. A test of the ligament in his left knee in 1982 indicated a full range of motion with an insignificant early degenerative joint disease. The tests of Pence's multiple joint pain and back injury complaints indicated no marked problems with the spinal area.
 
 
 5
 Dr. Charles Schultz, prior to his retirement from military service as an ear, nose and throat specialist at the United States Army Hospital at Fort Campbell, Kentucky, treated Pence for ear, nose, and throat problems, and, on occasion, for more general ailments, including some musculoskeletal maladies. Tr. at 380. During an ex parte deposition[2], Dr. Schultz was presented with some unspecified medical records which apparently recorded many of Pence's medical problems. Tr. at 381. When asked if the degenerative disc disease, arthritis, and knee injury would have inhibited Pence's ability to engage in bending, standing, walking or lifting activities, he responded, "Yes, definitely from time to time." Tr. at 382.
 
 
 6
 Dr. Schultz was also asked whether Pence could have engaged in sustained activities such as prolonged standing or walking, stooping or bending, lifting, repetitive use of his arms, or sitting, for periods between 6 and 8 hours a day. Tr. at 382-85. He opined that "[Pence] is extremely physically limited as far as any sort of activity is concerned and I was quite surprised he was even able to complete his college education...." Tr. at 385.
 
 
 7
 In September 1987, James Adams, a vocational expert, reviewed Pence's file and affidavit, and opined that the position of a military recruiter should be classified as "a light job exertionally with talking and hearing as a requirement." Tr. at 356. The position requires an individual to walk or stand for 6 to 8 hours a day, and lift objects that weigh 10 to 20 pounds. Tr. at 357. However, it was his belief that Pence's job was more strenuous and more stressful than most recruiters because of its travel requirements. Tr. at 356, 357.
 
 
 8
 On June 9, 1986, Pence filed an application for disability insurance benefits in which he claimed to be suffering from a loss of hearing, arthritis, ulcers, a left knee impairment, hemorrhoids, and a resection of his colon. He also complained of experiencing difficulty in kneeling and bending, and of bursitis in his joints. His disability claim was denied. He then sought review by an Administrative Law Judge (ALJ), Peter C. Edison, who concurred with the original decision to deny his application. On review, the Appeals Council remanded the matter for further consideration. A second hearing was conducted, and the ALJ concluded that Pence was not entitled to disability benefits. This decision was also vacated by the Appeals Council and remanded.
 
 
 9
 Following a third hearing, the same ALJ once again concluded that Pence's application for disability benefits should be rejected because (1) he had not been engaged in substantial employment since September 1979, and (2) although his impairments were severe, they did not amount to an impairment under the regulatory guidelines. Tr. at 16. Moreover, he found that Pence's "subjective complaints of pain and disability [had not been] substantiated to the extent alleged prior to his date of last insurance." Id. The ALJ also determined that Pence "has the residual functional capacity to perform work-related activities except for work involving heavy lifting and standing or walking over six hours a day." Id. Finally, after noting that Pence's past relevant work as supervisor of recruiters did not require such tasks, the ALJ opined that he was not disabled because these impairments did not prevent him from performing his past relevant work prior to the expiration of his insured status. Id. The Appeals Council affirmed, and the Secretary's decision became final.
 
 
 10
 On September 26, 1990, Pence filed a complaint with the district court, seeking a review of the Secretary's decision under 42 U.S.C. § 405(g). Motions for summary judgment were filed by the parties. The magistrate judge, to whom the motions had been referred, recommended the entry of a decision in favor of the Secretary. Senior District Judge L. Clure Morton adopted the recommendation and dismissed the action. This appeal followed.
 
 II.
 
 11
 Pence argues that the Secretary's failure to utilize the proper legal procedures in evaluating his disability case were so significant that they constituted a violation of his rights to due process under the constitution. Pence insists that the decision must be reversed because (1) the ALJ discounted Dr. Schultz's testimony in contravention of the generally accepted rule relating to the opinions of treating physicians, and (2) the ALJ's belief that he was not a credible witness was an improper evaluation of his pain.
 
 
 12
 The Secretary argues in response that substantial evidence exists and proper procedures were followed to support his decision to deny benefits. As such, he submits that Pence is not entitled to any disability benefits because (1) of his failure to demonstrate that he was unable to perform his past relevant work activity prior to the expiration of his insured status, (2) the law requires objective evidence to support a finding of pain, and (3) Dr. Schultz's testimony was properly discounted because the law does not bind an ALJ to a treating physician's conclusory statements.
 
 III.
 
 13
 Under 42 U.S.C. § 405(g), this court has jurisdiction to review the final decisions of the Secretary. The review is limited to whether the Secretary's decisions are supported by substantial evidence, and whether the proper legal standards were used in reaching a conclusion. McCormick v. Secretary of Health and Human Services, 861 F.2d 998 (6th Cir.1988). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir.1986) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981).
 
 
 14
 This court will neither try the case de novo nor decide issues of credibility or conflicts in the evidence. Garner v. Heckler, 745 F.2d 383 (6th Cir.1984). Instead, the evidence in the record is "taken as a whole" and must take into account whatever in the record fairly detracts from its weight. Born v. Secretary of Health and Human Services, 923 F.2d 1168 (6th Cir.1990).
 
 
 15
 The claimant has the ultimate burden of establishing an entitlement to benefits by demonstrating a disability as defined in 42 U.S.C. § 423(d)(1)(A). Disability benefits must be denied to a claimant if he is employed. On the other hand, in the event that the claimant does not have an impairment which significantly limits his ability to work, he is not disabled and his request for benefits must be rejected. However, where a claimant is not working and has a severe impairment, an examination must be conducted to determine whether the impairment satisfies the severity criteria. If the claimed impairment does satisfy one of the itemized severity criteria, the application for benefits will be granted. However, should the claimed impairment fail to satisfy the list of severity criteria, the Secretary must seek to determine if the claimant can return to his previously held job. 20 CFR § 404.1520 et seq.; See Mullis v. Bowen, 861 F.2d 991 (6th Cir.1988). At this point, it becomes the Secretary's burden to show that the claimant can perform other work, taking into account his age, experience, education, physical capacity, and the existence of jobs to match those qualifications. 20 CFR § 404.1520(f).
 
 
 16
 In this case, the ALJ concluded that Pence was able to return to his previous job as a supervisor of recruiters. Tr. at 16, p 7. Thus, Pence had the burden of demonstrating that he was unable to return to his past work. Studaway v. Secretary of Health and Human Services, 815 F.2d 1074 (6th Cir.1987); See also Allen v. Califano, 613 F.2d 139 (6th Cir.1980). On the basis of the record, we conclude that he failed to meet this burden. Barney v. Secretary of Health and Human Services, 743 F.2d 448 (6th Cir.1984).
 
 
 17
 Pence strongly contended in his brief and during the oral argument that the rejection of the ex parte deposition of Dr. Schultz[3] by the ALJ was improper. See Tr. at 14, 16-20, 21-22. Although the opinions of treating physicians are accorded great weight, this court has previously held that such deference is allowed only where the physician's opinion is based upon sufficient medical data. Miller v. Secretary of Health and Human Services, 843 F.2d 221 (6th Cir.1988); Murphy v. Secretary of Health and Human Services, 801 F.2d 182 (6th Cir.1985). The ALJ's decision to discount the testimony of Dr. Schultz was appropriate under the circumstances because there was no supporting medical data to support his conclusion. Moreover, the nature of the records that were reviewed by Dr. Schultz is not clear.[4] In the absence of some reasonably clear indication that his opinion was based on reliable medical data, this testimony was properly assigned little weight.
 
 
 18
 Pence also contends that the method of evaluating Pence's pain was improperly considered. Tr. at 22-27. We have previously determined that subjective complaints of disabling pain are considered in two-parts: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir.1986).
 
 
 19
 Even if the Secretary had assumed that the medical tests and examination results reflected a severe disabling pain, Pence's claimed disability was thought by the ALJ to have been without justification.[5] Pence's work activities in the garden, and his use of a riding lawn mower to cut the lawn were cited by the ALJ to support his conclusions. Tr. at 15. More importantly to the ALJ was Pence's entry into, and completion of, college during the period of coverage. Despite his pain, Pence nevertheless attended classes as a full-time student and ultimately graduated with a bachelor's degree. Such a determination by the ALJ that the claimant was not credible must be given deference by this court. Garner, 745 F.2d 383. Therefore, Pence's contention that the pain was not properly evaluated must be rejected.
 
 
 20
 Despite the lengthy record, and Pence's protestations to the contrary, the scope of the review by this court remains quite limited. The ALJ's determination that Pence was functionally able to return to his supervisory position with the Army prior to the expiration of his insurance coverage was supported by the evidence and properly considered. Accordingly, the Secretary's decision to deny benefits to Pence was proper, and the ruling by the district court is affirmed.
 
 
 
 [1]
 Honorable Julian Abele Cook, Jr., Chief United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 On October 12, 1988, Dr. Schultz was deposed by Pence's counsel. Tr. at 378-86
 
 
 [3]
 The ALJ opined that Dr. Schultz's testimony was entitled to "little weight since his specialty is ear, nose, and throat, and his primary conclusions are not in his specialty." Tr. at 14-15
 
 
 [4]
 Dr. Schultz acknowledged that he was familiar with Pence's medical records "just to a certain extent." Tr. at 4
 
 
 [5]
 The ALJ opined that Pence's self-serving complaints were not credible. Tr. at 15, 331. Following the first hearing, the ALJ determined that
 The [claimant'] appearance and testimony at the hearing were remarkable chiefly for the painfully obvious, self-serving complaints which he recited relative to his medical condition on and before September 30, 1981. These complaints and the self-imposed limitations on his activities which he described cannot be regarded as fully credible in light of the objective medical evidence.
 Tr. at 331.