RONALD LEE GILMAN, Circuit Judge,
concurring.
I concur in the majority opinion, but write separately because I disagree with the majority’s conclusion that the record lacks substantial evidence to support the ALJ’s finding that Germany-Johnson is not disabled. Nevertheless, I agree that the ALJ erred in failing to explain the diminished weight that he attributed to the opinion of Germany-Johnson’s treating physician, and would therefore remand the case for further consideration, but only on this narrower ground.
I agree with the majority that the record is replete with evidence that Germany-Johnson has impairments. Indeed, this conclusion is not disputed by any of the physicians who either examined Germany-Johnson or reviewed her file, including the Social Security Administration’s (SSA’s) own Dr. Goren. Even the ALJ acknowledged that Germany-Johnson suffers from the impairments of “fibromyalgia with degenerative disc disease of the cervical and lumbar spines.” (JA 23) But he ultimately concluded that “these impairments are not severe impairments.” (JA 23)
The majority concludes that “the evidence that can be considered to establish Germany-Johnson’s condition as ‘normal’ is minimal and is largely rebutted by the not-normal findings in the same reports.” (Maj. op. 776) Yet the medical documents on record show that the various tests conducted on Germany-Johnson repeatedly and consistently showed “normal” results. And where abnormalities were identified, the record lacks any information as to their severity.
Dr. Raynor, for example, as the claimant’s treating rheumatologist, found that her gait and muscle strength were “normal” and that her physical exam was “unremarkable.” (JA 109) Another examining-physician, Dr. Bhaiji, found, among other things, that her reflexes and the range of motion in her upper and lower extremities were “normal.” (JA 118) He also concluded that she would have no difficulty with work-related activities such as sitting, standing, and carrying objects, but that she may have difficulty walking and lifting. (JA 119) Dr. Gardziola, Germany-Johnson’s treating neurologist, documented the fact that she experienced pinching and numbness, but said that she exhibited full strength and that he could not easily identify her chronic pain. He did not come to any further conclusions about the severity of her impairments, and recommended that she undergo MRI and nerve-conduction tests. (JA 141) Dr. Burdette, who did the nerve-conduction studies, concluded that the results were “within the broad limits of normal for a patient of this age.” (JA 132) The radiologist, Dr. Rosenfeld, ran a series of MRI tests and found the results to be almost entirely “normal,” with the exception of a herniated disc, “annular bulging,” “diffuse distribution,” and “bony degenerative changes.” (JA 125-29) He did not, however, characterize the effect or severity of these problems. (JA 125-29) And Dr. Goren, the SSA’s medical expert, testified that Germany-Johnson did not have “objective findings to support her complaints.” (JA 23)
Although “not-normal” findings in Germany-Johnson’s medical record might in fact establish that she has impairments, this court has held that the existence of such impairments does not alone lead to the conclusion that they are (or are not) severe. See Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir.1988) (“[T]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition.”). Where, as here, a claimant is found to have impairments, but the tests come back ei *780 ther negative or in the normal range, I do not believe that the record supports a finding that the impairments are severe. See, e.g., Crady v. Sec’y of Health & Human Servs., 835 F.2d 617, 620-21 (6th Cir.1987) (holding that the ALJ was justified in determining that the claimant’s complained-of knee condition was “not a severe impairment” where post-operative tests showed no restriction of motion and “only minor degenerative joint changes” in that knee, and x-ray results “were essentially within normal limits”). I believe that the test results provide the most reliable and objective basis for determining the degree to which any of Germany-Johnson’s impairments impacts the claimant’s physical abilities or activities. And the test results in this case indicate that she has “normal” function, despite her impairments.
To be sure, Dr. Meacham, Germany-Johnson’s treating physician, sent a letter to her in 2003 stating that he had no doubts that she would face “significant difficulty with maintaining gainful employment,” and sent her another letter in 2004 stating that her symptoms were “debilitating.” (JA 145) The SSA’s so-called “treating source” regulation, 20 C.F.R. § 404.1527(d)(2), “requires an administrative law judge to give more weight to opinions from treating sources if the treating physician’s opinion is ‘well-supported by medically acceptable clinical and laboratory diagnostic techniques.’” (Maj. op. 777 (emphasis added)). Thus the opinion of a treating physician is generally given greater weight than that of other examining physicians. Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). But “such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.” Bogle v. Sullivan, 998 F.2d 342, 347-348 (6th Cir.1993). An ALJ “is not bound by con-clusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.” Buxton v. Halter, 246 F.3d 762, 773 (6th Cir.2001) (citation omitted).
The medical documentation that Dr. Meacham submitted provides little, if any, support for his conclusions. His record of each of Germany-Johnson’s office visits consists only of one or two pages of not-very-detailed notes in which he documents her complaints as she described her symptoms to him, and simply lists his diagnoses without elaboration. But he makes no mention of any method or test he used to diagnose her symptoms, or to independently confirm or objectively evaluate the severity of those symptoms. (JA 145-56, 172-75, 183) In one case, he explicitly noted “no clinical evidence on exam.” (JA 149) Nevertheless, the ALJ failed to comply with the requirement that he “always give good reasons in [his] ... decision for the weight [he gives to the] treating source’s opinion.” 20 C.F.R. § 404.1527(d)(2). This alone is grounds for reversal. See Wilson v. Comm’r of Soc. Sec., 378 F.3d 541, 544 (6th Cir.2004) (citing 20 C.F.R. § 404.1527(d)(2) and holding that “[although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation” that mandates a discussion of the weight given to the treating physician’s opinion).
Germany-Johnson ultimately bears the burden of proving the severity of her impairments. See Murphy v. Sec’y of Health & Human Servs., 801 F.2d 182, 185 (6th Cir.1986). Although I am sympathetic to her situation, I cannot say on the basis of this record that she has met that burden, or that the ALJ erred in finding that her impairments are not severe. But because the ALJ failed to state his reasons for the decreased weight that he attributed to the opinion of Germany-Johnson’s treating physician, I concur in the majority opin *781 ion’s decision to reverse the district court’s judgment and remand the case to the ALJ for further consideration.